UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :
THOMAS H. LEE EQUITY FUND V, L.P.,          :
THOMAS H. LEE PARALLEL FUND V, L.P.,        :
and THOMAS H. LEE EQUITY (CAYMAN)           :
FUND V, L.P.,                               :
                                            :
                  Plaintiffs,               :
                                            :           05 Civ. 9608 (GEL)
           -v-                              :
                                            :           **OPINION AND ORDER**
PHILLIP R. BENNETT, TONE GRANT,             :
SANTO C. MAGGIO, REFCO GROUP                :
HOLDINGS, INC., and JOHN DOES 1-10,         :
                                            :
                  Defendants.               :
                                            :
------------------------------------------------------------x

Greg A. Danilow and James W. Quinn, Weil, Gotshal & Manges LLP, New York, NY, for Plaintiffs.

Michael T. Hannafan, Blake T. Hannafan, and Nicholas A. Pavich, Hannafan & Hannafan, Ltd., Chicago, IL, and Norman Eisen, Melinda Sarafa, Zuckerman Spaeder LLP, New York, NY, for Defendant Tone Grant.

GERARD E. LYNCH, District Judge:

   Defendant Tone Grant ("Grant"), a former president of Refco Group Holdings, Inc. ("Refco"), moves to dismiss all claims against him in this case, which arises from an alleged massive fraud by corporate officers and other affiliates of Refco. The case was brought by plaintiffs Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P. and Thomas H. Lee Equity (Cayman) Fund V, L.P. (collectively, the "THL Funds"), investors in Refco. Several claims were presented against Refco and various individual defendants, including claims of fraud, negligent misrepresentation, breach of contract, contribution and

indemnification, and claims under the securities laws.  Grant, however, is a defendant only in the breach of contract claim.  His motion will be denied.

## BACKGROUND

In June 2004, the THL Funds agreed to invest approximately $507 million in Refco, a provider of execution and clearing services for exchange-traded derivatives.  (Comp. ¶ 3). Plaintiffs allege that they made this investment on the basis of intentional misrepresentations and fraudulent nondisclosures about the company's financial status by defendants Phillip R. Bennett, President and CEO of Refco, and Santo C. Maggio, President and CEO of related companies Refco Securities, LLC and Refco Capital.  (Compl. ¶¶ 4-5).  When the true financial picture of Refco became clear in October 2005, Refco's stock prices fell dramatically, leading to "financial disaster" and a filing for bankruptcy protection.  Bennett was arrested and indicted on charges of securities fraud.  (Compl. ¶ 8).

Plaintiffs do not allege any intentional wrongdoing by Grant.  However, they seek to enforce against Grant a guarantee provision of a 2004 Equity Purchase and Merger Agreement (P. Ex. A ("the Agreement")) between Refco, Refco Group Ltd., LLC, Refco Merger, LLC, and THL Refco Acquisition Partners, an entity affiliated with THL funds.  (Compl. ¶¶ 76, 79.) Plaintiffs allege that Refco's breach of two express covenants within that agreement triggers application of Section 9.12 of the Agreement, a personal guarantee executed by Bennett and Grant of Refco's obligations under Article 8 of the Agreement.  Specifically, plaintiffs claim that under this guarantee provision, Bennett and Grant are each liable for 50% of Refco's obligations under the Agreement. (Compl. ¶¶ 72-76).

Grant moved to dismiss the complaint as against him, making three arguments: first, that no claim for relief has been stated because the complaint fails to allege that the contract was supported by consideration; second, that the claim must be dismissed because plaintiffs may not recover from Grant without first attempting to recover against Refco; and third, that the issues presented are not yet ripe as to him.  None of these arguments is persuasive.

## DISCUSSION

"[T]he office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."  Id., discussing Conley v. Gibson, 355 U.S. 41, 45 (1957).

### I. Consideration

Grant's first argument is that the complaint fails to allege that the portion of the Agreement in which Grant guarantees Refco's obligations was supported by consideration, and that plaintiffs' claim therefore fails as a matter of law.  (Grant Mem. at 5-6).  This argument is without merit.

Under New York law (which governs the Agreement, per § 9.3), consideration is required for a contract to be valid.  See, e.g., Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 463 (1982); Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004).  As a matter of pleading, however, the prevailing rule is that consideration need not be pled in the complaint, and that lack of consideration is best treated as an affirmative defense.  See Palmer v. A. & L.

Seamon, Inc., No. 94 Civ. 2968, 1995 WL 2131, at *2 (S.D.N.Y. Jan. 3, 1995) (denying motion to dismiss for failure to plead consideration because it "is in the nature of an affirmative defense rather than a neglected pleading requirement as urged by defendant"); see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust, 375 F.3d 168, 177 (2d Cir. 2004) (To state a claim for breach of contract, a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages" (internal citations and quotation marks omitted)).

Moreover, Grant misapprehends the nature of consideration in a guarantee agreement. "It is well established that 'where one party agrees with another party that, if such party for a consideration performs a certain act [f]or a third person, he will guarantee payment of the consideration by such person, the act specified is impliedly requested by the guarantor to be performed and, when performed, constitutes a consideration for the guarantee." Dunkin' Donuts of America, Inc. v. Liberatore, 526 N.Y.S.2d 141, 141 (2d Dep't 1988), quoting Sun Oil Co. v. Heller, 248 N.Y. 28, 32-33 (1928). In other words, the consideration received by the primary obligor also serves as consideration for the guarantor. In this case, the Complaint clearly alleges that the primary obligor, Refco, received hundreds of millions of dollars under the Agreement. Such a transfer of funds can serve as valid consideration regardless of whether the financial benefits flowed directly to Grant. Thus, Grant's contention that he left Refco before the deal closed is misplaced. See id. (holding that there was valid consideration for guarantee even where guarantor was not a shareholder of the corporation that benefitted from the agreement).

Finally, even if plaintiffs were required to show that Grant himself received valid consideration, the complaint alleges that Grant "received hundreds of millions of dollars" as a

4

result of the investment by plaintiffs. (Compl. ¶ 2; see P. Mem. 14-15.) In combination with the allegation that the Agreement was "a valid and enforceable contract among the parties" (Compl. ¶ 71), this allegation is a sufficient basis from which to infer that "something of real value in the eye of the law was exchanged." Cont'l Energy Corp. v. Cornell Cap. Partners, No. 04 Civ. 260, 2005 WL 3543972, at *2 (S.D.N.Y. Dec. 28, 2005) (internal citations and quotation marks omitted). Grant argues that thes allegation is insufficient because it fails to identify the payor, the time of the payment, and the "subject of the payment," and to explain what is meant by the term "as a result of." (Grant Mem. 8.) Such details are not required under the notice pleading system established by Rule 8, Fed. R. Civ. P.

In short, Grant has offered no compelling argument for dismissal on grounds of lack of consideration. Grant's improbable contention that he entered into the guarantee "for free" (Grant Mem. 9) is, of course, a factual assertion that may not properly be addressed on a Rule 12(b)(6) motion to dismiss. See Williams v. Deutsche Bank Secs., Inc., No. 04 Civ. 7588, 2005 WL 1414435, at *9 n.7 (S.D.N.Y. Jun. 13, 2005).

## II.     Exhaustion

Grant argues that the claim against him cannot be pursued until plaintiffs first establish Refco's liability and seek payment directly from Refco. (Grant Mem. 11.) Under New York law, a plaintiff establishes a prima facie case that it is entitled to recover from a guarantor when it shows: "(1) that it is owed a debt from a third party, (2) that the defendant made a guaranty of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant." Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994). Grant argues that a creditor may not seek to recover from a guarantor until it has tried and failed to recover from the

primary obligor.  This argument is mistaken.

There are two kinds of guarantees: guarantees of payment and of collection.  "In a guaranty of collection, the guarantor undertakes the responsibility to pay if and only if the debt cannot be collected from the principal through legal proceedings," while in a guarantee of payment, the guarantor "undertakes an *unconditional* guaranty that the debtor will pay on the debt.  If for some reason, the debtor fails to make payment to the creditor, he can proceed directly against the guarantor."  N.Y.C. Dep't of Fin. v. Twin Rivers, Inc., 920 F. Supp. 50, 52-53 (S.D.N.Y. 1996) (emphasis added).  In other words, enforcement of a guarantee of payment is not conditioned on exhaustion.

The language of the agreement that should guide the determination of which kind of guarantee is involved.  Id. at 52.  In this case, the plain language of the Agreement indicates that it creates an unconditional guarantee; the guarantee clause itself specifically says "the guarantees . . . are unconditional."  (Agreement § 9.12.)  Grant's contention that the agreement contains implicit conditions (Grant Reply 8-9) may or may not ultimately create an issue of fact sufficient to require trial, but it is at least clear that a reasonable factfinder could find that there are no conditions precedent to the enforcement of the guarantee against Grant — if not that any factfinder would be required to do so.  See, e.g., Terwin Warehouse Mgmt. LLC v. Integrus Mortgage LLC, No. 05 Civ. 10331, 2006 WL 2708463, at *3 (S.D.N.Y.  Sept. 21, 2006).  Accordingly, the complaint will not be dismissed for failure to allege exhaustion of the claim against the primary obligor.

**III.     Ripeness**

Finally, Grant argues that this case must be dismissed under the ripeness doctrine. To determine whether a case is ripe requires a two-pronged inquiry into "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005), quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967). The doctrine of ripeness is a doctrine "rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority," and the two prongs of the ripeness inquiry correspond to these two fundamental concepts. Murphy, 402 F.3d at 347.

The "fitness of the issues" prong "recognizes the restraints Article III places on federal courts" and "requires a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development for judicial decision." Id. Grant's argument as to this prong is essentially a repackaging of his exhaustion challenge; he argues that the case is not ripe because he has no liability under the Agreement at this time, and will have none until Refco is found liable and then fails to pay damages. In light of the conclusion that plaintiffs need not exhaust their claims against the primary obligor before proceeding against Grant, this argument is without merit. The issues to be determined here are only Refco's liability and the scope of Grant's contractual obligation, so there is no obstacle to an informed judicial decision at this time. This is not a case that "presents issues that might never arise." United States v. Johnson, 446 F.3d 272, 279 (2d Cir. 2006).

As to the second prong, the hardship to the parties that might be caused by withholding judicial decision, postponing judicial action would simply postpone recovery for the plaintiffs if

7

they are so entitled or a finding of no liability for Grant. Accordingly, Grant's ripeness challenge is without merit.

## CONCLUSION

For the foregoing reasons, defendant Grant's motion to dismiss the complaint (Doc. # 29) is denied.

SO ORDERED.

Dated: New York, New York
      March 27, 2007

                                              GERARD E. LYNCH
                                              United States District Judge